CONSOLIDATED EDISON CO. OF NEW YORK, INC., Long Island Lighting Co., Orange and Rockland Utilities, Inc., Southern California Edison Co., Pacific Gas and Electric Co., San Diego Gas and Electric Co., Appellants,

v.

George B. BREZNAY, Director, and Thomas L. Wieker, Deputy Director, Office of Hearings and Appeals, U.S. Department of Energy, Appellees.

No. DC–108.

Temporary Emergency Court of Appeals.

Argued Nov. 14, 1988.

Decided March 14, 1989.

Philip P. Kalodner, Philadelphia, Pa., was on the brief, for Consolidated Edison Co. of New York, et al., appellants.

Don W. Crockett, Judicial Litigation Div., Economic Regulatory Admin., U.S. Dept. of Energy, with whom John L. Gurney of the same office, and John R. Bolton, Asst. Atty. Gen., Civ. Div., Dept. of Justice, Washington, D.C., were on the brief, for appellees.

Before Chief Judge GARZA,* Judges WILLIAM H. BECKER and THORNBERRY.*

WILLIAM H. BECKER, Judge.

## STATEMENT OF FACTS

### Complaint

This action was commenced on June 18, 1987, by the filing of a complaint in the United States District Court for the District of Columbia. R. 5–17. The complaint was filed by the appellant utilities, Consolidated Edison Company of New York (Consolidated Edison), and others against the appellees Breznay, Director, and Wieker, Deputy Director, of the Office of Hearings and Appeals (OHA) of the U.S. Department of Energy (DOE).

In their complaint the appellant utilities sought an injunction "(i) requiring the defendants to grant party status to plaintiffs, and (ii) prohibiting the defendants from rendering their decision in HRO–0285, 'overcharge proceeding before OHA of DOE,' (against Cities Service Oil and Gas Corporation) until and after, consideration of the Memorandum previously submitted by plaintiffs, and the oral argument of plaintiff's counsel." Jurisdiction of the District Court was invoked pursuant to 28 U.S.C. § 1331 and 1361.

The complaint contained the following principal and material allegations; that the Economic Regulatory Administration (ERA) of the DOE had issued to Cities Service Oil & Gas Corporation (Cities Service) a Proposed Remedial Order (PRO) alleging violations by Cities Service of the Mandatory Petroleum Pricing Regulations previously issued by DOE, and finding an aggregate overcharge of $257,530,553.15 which, with interest, would require Cities Service to make a refund in excess of $500,000; that on May 10, 1985, Philadel-phia Electric Company (PECO) acting with certain other transportation end users of electricity filed a Request to participate as a party in the proceedings; that PECO identified itself as a utility using oil for the generation of electricity, and sought intervention on behalf of and to represent the interest of all electric utilities "burning" oil to generate electricity, a use representing 8% of the consumption of oil in the United States during the relevant period.

The complaint further stated that the appellee Wieker, Deputy Director of OHA, had by letter granted the request of counsel for PECO to participate and, under the criteria set forth in 10 C.F.R. 205.194, to represent each of the other four appellant utilities, including PECO; that thereafter PECO, and the three transportation end users with whom it acted, filed joint pleadings and participated in the proceedings before OHA by filing joint pleadings, and inter alia by filing a Response to the Statement, Supplemental Objections, and to various motions of Objections by Cities Service.

The complaint further stated that thereafter by petition filed on October 17, 1986, PECO and the three other transportation end users petitioned OHA for permission to withdraw from the proceedings individually, and as representatives of the utility and surface transportation classes of end users, explaining that they were required to withdraw from individual participation because they were "signatory parties" to a certain Final Settlement Agreement in In Re: The Department of Energy Stripper Well Exemption Agreement Litigation, M.D.L. 378,[1] stating that "approval of such withdrawal should in no way prejudice the right of other members of the classes, which they sought to represent ... who may have relied on the participation of PECO...."

---

* Judges Garza and Thornberry filed concurring opinions, attached hereto.

1. See In Re The Department of Energy Stripper Well Exemption Litigation, M.D.L. 378 (D.Kan. 1986), 653 F.Supp. 108, for description of the settlement agreement, approved on appeal by this Court in 1985, TECA Nos. DC–91 to DC–100, United States v. Exxon Corporation (TECA 1985), 773 F.2d 1240, cert. denied, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986). The related escrow fund in M.D.L. 378 was over one (1) billion dollars. In Re: The Department of Energy Stripper Well Exemption Litigation, supra, 653 F.Supp. 108, 1.c. 110.

The complaint further stated that, by letter of October 24, 1986, appellee Wieker for OHA "in response to the petition of PECO et al, and of a request ... filed by Cities seeking dismissal of PECO et al. on the same basis" that "it had been determined that members of the PECO group should be dismissed from this proceeding" ... and are dismissed as potential aggrieved parties in this Cities Service case; that in a document filed on March 30, 1987 "plaintiffs herein, together with certain other shipping companies and certain paper manufacturers requested the opportunity to participate in these proceedings in place of prior participants, including PECO for the specific purpose" to advance the positions on the liability issues previously articulated by PECO, requesting limited participation "in the form of filed an attached Memorandum in Support of the Issuance of Remedial Order and to participate in oral argument" scheduled and postponed several times and to be rescheduled; that by letter of April 9, 1986, appellees Wieker, on behalf of OHA, and Breznay "denied in all respects the Request to Participate filed by these plaintiffs and others" on two grounds: (i) failure by plaintiffs to seek participation at an earlier date; and (ii) that arguments in the memorandum they sought to file "concerns the legal issue whether Cities Service transactions were a means to circumvent the Entitlements Program (and) we have previously held that the issue has not been presented for adjudication in this proceeding"; that by letter of April 16, 1987 to appellee Wieker the ERA protested that it was "asserting that the subject Cities Service transactions circumvented and contravened the Entitlements Program"; that ERA expressed no comment "on the other ground for rejection to the application of plaintiffs to participate, namely, the "untimeliness" of the application; that by letter of April 22, 1988, appellee Wieker characterized the position of ERA in its letter of April 16 as a "request (for) reconsideration of a January 13, 1986 Decision and Order" and advised ERA that its submission of April 16, 1986 "was not timely filed and should be dismissed"; that by letter of April 21, 1987 plaintiffs and the other shippers and manufacturers sought reconsideration of the earlier rejected Request to Participate, which was by letter of April 27, 1987 of appellee Wieker on behalf of OHA denied; that OHA from July 2, 1985 until April 10, 1987 by published Statement of Restitutionary Policy in 50 Fed.Reg. 27,400 and Statements of Modified Restitutionary Policy in 41 Fed.Reg. 27,899 and 51 Fed.Reg. 29,689 it was the policy of DOE to deny any right on the part of utility end users and other end users to recover such refunds sought as are sought in the current proceedings against Cities"; that "it was not until April 10, 1987, one day subsequent to the rejection of the Request to Participate of these plaintiffs that OHA confirmed the right of utilities in general and accordingly of these plaintiffs in particular, to recover any refunds obtained in the Cities and similar proceedings their pro rata share of refunds; that accordingly it is probable that any request to participate by the plaintiffs during much or all of the period from July 2, 1985 through early April 1987 would have been rejected by OHA because (i) during most of the period until October 15, 1986 their interest was being represented by participation by PECO and associated transporters, and (ii) until early April 1987 their right to recover any refunds was in doubt; that the earlier interim decisions of OHA in the Cities matter, as interpreted by Wieker in rejecting plaintiffs' request to participate on April 9, 1987 and the rejection of the belated effort of ERA of April 22, 1987 to support the arguments of PECO raise a substantial doubt that OHA will "(i) fail to order refunds in full amount justified by law, or (ii) employ a theory of violation which will be insupportable on appeal to the Federal Regulatory Commission and the courts"; that neither ERA nor the States who have been granted party status by appellee Wieker are advocating the theory of violation that PECO and these plaintiffs advocate."

In the portion of the complaint herein designated "D. CAUSE OF ACTION" plaintiffs assert a right to participate as parties to the Cities Service proceeding HRO-0285 pending before appellees be-

cause: "(a) they have an interest relating to any fund recovered arising pursuant to the Settlement Agreement in MDL 378, citing Section 209 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, and the Petroleum Overcharge Distribution Act of 1986, Pub.L. No. 99–509, 15 U.S.C. § 4501 et seq.; (b) the disposition of the action may impair their ability to protect their interest because (i) in the event of a disposition in favor of Cities, in whole or in part, it is unlikely that plaintiffs or ERA would have a right to appeal to the Federal Energy Regulatory Commission (FERC) or to the courts, and (ii) to the extent any decision ordering Cities to make restitution is based on 'unsustainable grounds the order of restitution may not be sustainable on appeal'; (c) plaintiffs interests is not adequately represented by existing parties; (d) the application for intervention was timely; that the denial of appellant plaintiffs Request to Participate was an abuse of the discretion, which they may have to determining who is to be granted the right to intervene; that unless relief is granted in the form of the requested injunctions plaintiffs will suffer irreparable harm."

### Answer of Defendants Wieker and Breznay

On August 13, 1987 the defendants Wieker and Breznay, of OHA of the DOE, appellees herein, filed their answer to the complaint. R. 115–120. This answer admitted the jurisdiction of the United States District Court of the District of Columbia; admitted or denied the allegations of the complaint consistently with the administrative record; stated that the defendants were without knowledge concerning facts not a part of the record; and denied legal argument and conclusions. The answer also asserted as "Affirmative Defenses" that the complaint failed to state a claim for relief, and that the denial of plaintiffs application was "purely discretionary."

### Motions For Summary Judgment And Rulings And Hearings Thereon

Plaintiffs filed a motion for summary judgment on July 10, 1987 before the answer of the appellees and defendants Wieker and Breznay was filed. After that answer was filed defendants Wieker and Breznay filed a cross-motion for summary judgment.

The motion of plaintiffs for summary judgment, and the cross-motion for summary judgment were fully heard on October 15, 1987, by United States District Judge John G. Penn, who thereafter, on November 30, 1987, entered orders: (1) denying the motion of plaintiffs for summary judgment; and (2) granting the (cross) motion of defendants Wieker and Breznay for summary judgment dismissing the case. R. 199. On the same day a *Memorandum* containing findings of fact and conclusions of law in support of these orders was filed. R. 180–198. After the appeal to this Court of Consolidated Edison of New York, et al. was taken, the plaintiff appellants filed a Supplemental Record on Appeal containing a transcript of the hearings of October 15, 1987 on the motion and cross-motion for summary judgments, which has been considered with the original Record on Appeal.

### Findings Of Fact And Conclusions Of Law Of District Court In Memorandum Of December 1, 1987

After entering the orders of November 30, 1987 (1) denying appellant-plaintiffs Motion for Summary Judgment; (2) granting appellee-defendants (Cross) Motion for Summary Judgment; and (3) dismissing the "case" (R. 199) the District Court filed on December 1, 1987, 683 F.Supp. 832, a *Memorandum* containing its findings of fact and conclusions of law supporting its orders of November 30, 1987. R. 189–198. The *Memorandum*, including numbered footnotes, is as follows:

"This case is before the Court on the Plaintiffs' Motion for Summary Judgment and Defendants' Cross Motion for Summary Judgment. Plaintiffs, six electric utility companies seek relief from a determination by defendants, the Department of Energy's ('DOE') Office of Hearings and Appeals ('OHA') which denied them the right to participate in overcharge proceedings pending before OHA. For the reasons stated

below, the Court grants summary judgment for the defendants.

"On March 5, 1985, the Economic Regulatory Administration ('ERA') issued a Proposed Remedial Order ('PRO') to Cities Service Oil and Gas Corporation ('Cities Service') alleging crude oil pricing violations in the amount of approximately $257 million. On April 15, 1985, Cities Service filed a Notice of Objection to the PRO, contesting the alleged violations and instituting an adjudicative proceeding before OHA.

"Pursuant to DOE regulations[1], on May 10, 1985, plaintiffs' counsel[2], filed a timely request on behalf of Philadelphia Electric Company ('PECO') to participate in the *Cities Service* proceeding. This request was granted on May 15, 1985.[3] PECO participated in the OHA proceedings in *Cities Service*, filing several pleadings asserting the deficiency of the theory of violation asserted by Cities and insufficiency in the amount of overcharges the ERA sought to recover. After seventeen months of participation in the proceedings, on October 17, 1986, PECO petitioned OHA for permission to withdraw from the *Cities Service* proceeding as required by the terms of a settlement agreement reached in an unrelated case, *In Re: The Department of Energy*

*Stripper Well Exemption Litigation*, M.D.L. 378 (D.Kan.). In accordance with its original request to participate, PECO sought only to withdraw its individual participation without prejudice to the other members of classes it sought to represent. Again, the defendants made no mention of the class representation issue in the grant of withdrawal to PECO by letter dated October 24, 1987.

"Five months later, on March 30, 1987, plaintiff utility companies moved to intervene in the *Cities Service* case. The procedure of this intervention was to advance the positions on liability issues previously articulated by PECO. Plaintiffs' request to participate in the *Cities Service* matter involved submitting a memorandum in sufficient time for Cities to respond in the same document in which it would respond to the ERA's final brief, and to participate in oral argument. The plaintiffs contend that their participation would in no way delay the *Cities Service* proceeding.[4] On April 9, 1987, OHA denied plaintiffs' belated request on the ground that it was both untimely and it also sought to present issues for adjudication which were no longer in the proceeding.[5] Plaintiffs sought re-

"1. DOE's administrative procedures provide in relevant part:

(a) Upon receipt of a Notice of Objection, the Office of Hearings and Appeals shall publish a notice in the Federal Register which states ... that any person who wishes to participate in the proceeding must file an appropriate request with the Office of Hearings and Appeals.

(b) The Office that issued the Proposed Remedial Order and the person to whom the Order is directed shall be considered participants ... at all stages of an enforcement proceeding. Any other person whose interest may be affected by the proceeding may file a request to participate in the proceedings ... within 20 days after publication of the notice referred to in paragraph (a) of this section.

(c) After considering the requests submitted pursuant to paragraph (b) of this section, the Office of Hearings and Appeals shall determine those persons who may participate on an active basis in the proceeding and the nature of their participation.

(e) A person requesting to participate after the period *must show good cause for failure to file a request within the prescribed time period.*

10 C.F.R. § 205.194 (1987) (emphasis added).

"2. Counsel for the plaintiffs participated in a joint request for participation on behalf of his clients, a trucking company, a taxi cab company and an individual motorist. The other participant in this request was the Philadelphia Electric Company represented by another attorney. Hereinafter all of these participants are included in the 'PECO' designation.

"3. In their request to participate both Philadelphia Electric Company and the surface transportation end users sought to represent the interests of all utilities burning oil to generate electricity and all of the surface transportation end users of oil products in the United States. This aspect of the request was not addressed by OHA.

"4. Plaintiffs allege that their analysis demonstrates the irrelevancy of the evidence offered by Cities and that many of their arguments will simplify the analysis required by OHA.

"5. In a January 13, 1986 Order issued to Cities, OHA stated:

One comment concerning the PRO is appropriate at this point. In the text of the March 5 PRO, there appear to be two possible theories of

consideration of OHA's decision on April 21, 1987, which was denied on April 27, 1987 for the reasons previously given.[6] This suit was filed two months later, asking the Court to order the Director and Deputy Director of OHA to grant plaintiffs the right to participate in the final phase of the *Cities Service* proceeding.[7]

## I.

"Plaintiffs assert that under *Fort Pierce Utilities v. DOE*, 503 F.Supp. 1014 (D.D.C. 1980), this Court has implicitly held that the standard of intervention before OHA is easier to meet than under the Federal Rule of Civil Procedure because of strong public policy in favor of full participation before OHA. However defendants contend that *Fort Pierce* presents a different issue than the facts at bar. The Court agrees. In *Fort Pierce*, the plaintiffs complained that DOE permitted Exxon Corporation to participate in an enforcement proceeding as a potentially injured party but denied the same right to plaintiff public utilities who also claimed to be potentially injured parties. The district court found no basis for this disparate treatment, particularly since DOE 'gave no reasons whatever for its denial of party status' to the public utilities. *Id.* at 1027. Further, the Court held that DOE 'improperly exercised its discretion' under the regulations in denying full party status to the utilities. *Id.* In the

instant case, there is no question that plaintiffs had standing to participate in the proceedings. Standing was accorded to an electric utility in 1985 when OHA granted PECO's timely application. Moreover, there is no indication that OHA improperly applied its rules when it denied plaintiffs request for participation.

"Plaintiffs also contend that under both the DOE regulations and Rule 24 of the Federal Rules of Civil Procedure, they have a sufficient 'interest' for intervention. This contention is irrelevant on these facts because intervention was not denied on the basis that plaintiffs lacked an interest in the proceeding. Further in a similar case pending before the District Court for the District of Delaware, where these plaintiffs sought to intervene, that Court rejected this argument. *Getty Oil Co. v. DOE*, 117 F.R.D. 540, 548 (D.Del.1987) In *Getty* the district judge stated:

> TECA has twice specifically rejected motions to intervene by private parties in § 209 actions on the ground that the public and private enforcement devices must not be commingled. *Exxon Corp.*, 773 F.2d at 1283; *Cities Service*, 715 F.2d at 574. The DOE enforcement action does not affect a private parties' right to recovery, and any restitutionary remedy ordered by a court to correct violations will not impair a legally cognizable interest. TECA's precedents dem-

---

regulatory violation that the ERA could have brought into play. The first theory is that the purpose of the reciprocal transactions was to trade away price-controlled crude oil that Cities would otherwise have had to report to the Entitlements Program, the reciprocal transactions were a means to circumvent the Entitlements Program. As indicated above, however, the March 5 PRO does not make any conclusions of law concerning whether the certifications for various tiers of crude oil were properly passed and reported to the Entitlements Program. Accordingly, this first theory of liability has not been presented for adjudication in this proceeding. As a result, we will assume for purposes of this proceeding that the crude oil certifications were properly passed. The theory of regulatory violation that has been articulated in the conclusions of law portion of the March 5 PRO is that Cities charged a total price for price-controlled crude oil in excess of the lawful ceiling price for that grade and tier of crude oil. We will there-

fore evaluate the PRO on the basis of the second theory of liability.

*Cities Services Oil and Gas Corp.,* 13 DOE para. 84,045 at 87,352 (1986).

**"6.** The fifteen states that are participating in the *Cities Services* proceeding objected to plaintiffs' request to intervene.

**"7.** Over the past two years, the *Cities Service* case has moved to the point where it is now close to submission on all issues. An initial evidentiary hearing was held by OHA on July 28–31, 1986, subsequent to which Cities filed a post hearing brief on September 17, 1986. A second evidentiary hearing was conducted by OHA on December 3–5, 1986, and both parties again filed post hearing briefs. A third round of briefing was submitted to OHA by the parties on March 27, 1987 and April 17, 1987. The final evidentiary hearing originally scheduled for April 28, 1987, has been postponed and is awaiting rescheduling.

onstrate that private entities do not have the requisite interest in public enforcement actions brought under § 209 to intervene as of right.

*Id.* Finally, plaintiffs did not have to rely on DOE's enforcement action to protect their interests with respect to any overcharges by Cities. They had an independent cause of action for treble damages under Section 210 of the Economic Stabilization Act, 12 U.S.C. § 1904 note, which they chose not to exercise.[8] *See Cities Service Co. v. DOE*, 715 F.2d 572, 573–74 (Temp.Emer.Ct.App.1983).

## II.

"In regard to the untimely nature of their request, plaintiffs assert that their application for intervention is timely because decisional law permits another member or members of a class to take the position of the timely intervenor as if it had filed at the time the original intervenor had filed. Using plaintiffs argument, if one assumes that the decisions of OHA granting withdrawal to PECO are viewed as deferring the class certification issue by not mentioning it, then another member of the class may intervene in place of the withdrawing intervenor, specifically citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). In response, defendants point out that OHA's procedural rules for enforcement proceedings do not provide for class actions. *See* 10 C.F.R. § 205, Subpart O. Since plaintiffs' Motion for Summary Judgment states that 'there is, indeed, no provision for formal class certification in the OHA Rules', and that plaintiffs never formally sought class certification, the Court concludes that there is

no merit to the plaintiffs' class action argument on these facts.

## III.

"The final and independent aspect of plaintiffs' request for relief is that their application is timely since they seek to participate only in an upcoming phase of the litigation and not to reopen prior proceedings. Therefore, plaintiffs conclude that by granting them participation, no prejudice accrues to Cities, the respondents in the OHA proceedings.[9] Plaintiffs also argue that they have a 'legally protectable interest' which gives them the right to intervene in these proceedings. Each of these contentions will be addressed.

"Intervention, whether of right or permissive, must be timely and if it is not timely it must be denied. *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973). The only reason given by plaintiffs for failing to file a timely request for participation is that they relied on another public utility, PECO, to advance their arguments. This justification was flatly rejected by the Temporary Emergency Court of Appeals in *New York Petroleum Corp. v. Ashland Oil, Inc.*, 757 F.2d 288, 292 (Temp.Emer.Ct.App.1985). That Court held:

> Appellants' argument that their delay was excused by their decision to rely on DOE to protect their interests is totally without merit. When a party decides to forgo taking action in a lawsuit in the expectation that another party will protect its interests, it does so at its peril.

*New York Petroleum*, 757 F.2d at 292. Accordingly this Court finds undue delay in Plaintiffs' request for participation.[10] Fur-

---

"**8.** Plaintiffs claim in their Motion for Summary Judgment that the passage of time virtually closes this remedy to them.

"**9.** Plaintiffs contend that this is not a request for mandamus, however since plaintiff invoked the Court's jurisdiction under both 28 U.S.C. §§ 1361 and 1331 in their complaint, the Court will briefly address the issue of mandamus. The law is well settled that a writ of mandamus should only be issued where there is a clear duty on the part of an official to act and that duty is clearly and plainly established. *King v.*

*Morton*, 520 F.2d 1140, 1146 (D.C.Cir.1975). Accordingly, the Court concludes that there is no clear or plain duty of an official to act presented herein.

"**10.** In their Motion for Summary Judgment plaintiffs contend that '[t]he only effect of plaintiffs delaying their application for intervention from July 5, 1986 when the *Stripper Well* Court's approval made it apparent that PECO would be required to withdraw as a putative class representative and from October 24 when the OHA approved the withdrawal of PECO until March

ther, plaintiffs' counsel provides no acceptable explanation as to why plaintiffs waited until five months after PECO withdrew to seek intervention.

"Second, notwithstanding plaintiffs' unexcused delay in seeking participation, plaintiffs also endeavor to introduce arguments that OHA concluded in its January 13, 1986 Order were not presented for adjudication in the *Cities Service* proceeding. Since, PECO was a party at that point in the proceeding, the views of plaintiffs herein had been presented to OHA for consideration. It is apparent that plaintiffs seek at the very least to reopen an issue that OHA had previously determined. Therefore, presentation of plaintiffs' arguments in the final phase of the proceedings is untimely. Additionally, the facts that Cities may be aware of the positions advanced by plaintiffs is unpersuasive where Cities, in an enforcement proceeding against it, may be entitled to rely on an Order of OHA explaining the theory of violation that it will be charged with. Clearly, Cities would require some preparation time to address this renewed issue and this would then require delay in the proceedings. Finally, since plaintiffs did not participate in the two previous evidentiary hearings, presumably because they deemed them 'irrelevant', it is unfair to require a delay in the proceedings for these plaintiffs.

"The Court concludes that OHA gave a complete explanation for its decision to deny plaintiffs' request for participation. Indeed, OHA went beyond the fact that plaintiffs were inexcusably late in filing to demonstrate why plaintiffs participation would not be timely or appropriate in the final phase of the *Cities Service* proceeding. In light of the foregoing, summary judgment must be granted for the defendants.

"A final judgment will be entered in accordance with this memorandum."

## DECISION ON THIS APPEAL

Based upon the full record of the administrative record, the records in the United States District Court, including the Record on Appeal and the Supplemental Record on Appeal, the briefs of the parties and of the proposed Intervenor and *Amicus Curiae* Cities Service Oil and Gas Corporation, arguments of counsel on appeal, and the "Notice of Filing of Relevant Decision" purportedly under Rule 21(k) of this Court, for the following reasons we affirm the judgment of the United States District Court for the District of Columbia, from which this appeal was taken, dismissing the action below of appellants.

*Decisions On Issues Presented By Appellants Consolidated Edison Of New York, Long Island Lighting Company, Orange And Rockland Utilities, Inc., Southern California Edison Co., Pacific Gas And Electric Company*

In their joint brief, the foregoing parties, designated herein as appellants (pursuant to Rule 21 of this Court and Rule 28, F.R.A.P.), present three statements of issues presented.

The contentions of the appellants on this appeal are stated in their brief which includes the "Statement of Issues Presented" and "Argument", filed pursuant to Rule 21 of this Court (TECA), and Rule 28 of the Rules of Appellate Procedure (F.R. A.P.).

These issues presented are discussed hereinafter and decided in the order presented by the appellants.

### I.

*The Appellant Utilities Do Not Satisfy All The Requirements For Compulsory Participation In The OHA Proceeding*

In the first of the issues presented on this appeal, appellant utilities contend that they "satisfy all of the requirements for participation in the OHA proceeding" because the threat of impairment of their

30, 1987, was to eliminate them as participants in the two evidentiary hearings.' Plaintiff does not seek to reopen these proceedings, believing that the evidence adduced therein was 'irrelevant' to the *Cities Service* proceedings."

interest is most serious because of the inadequacy of representation. In substance appellants contend that they were parties to the "OHA proceeding".

This contention has no support in the uncontroverted facts in which the OHA exercised its discretion to deny appellants' application to participate in the administrative enforcement proceeding against Cities Service. The uncontroverted factual record discloses that on April 1, 1985, an administrative enforcement proceeding was commenced by DOE against Cities Service before the OHA alleging violations of DOE regulations involving more than $250,000,-000 in overcharges; that on May 10, 1985, PECO and three other parties filed a request to participate in the Cities Service enforcement proceeding (under 10 C.F.R., Part 205, Subpart D, Section 505.194), alleging that it was an electric utility acting on behalf of electric utilities buying oil to generate electricity (R–93); that on May 15, 1985, OHA wrote counsel for PECO that it was appropriate for PECO to represent each of the four parties and participate in the Cities Service proceeding; that 17 months later PECO moved to withdraw its participation in the proceeding because it was a party to the settlement agreement in *The Department of Energy Stripper Well Exemption Litigation*, M.D.L. 378 (D.Kansas) R–104; that the application of appellants for compulsory participation in the Cities Service proceeding was denied because, among other reasons, they were not parties to the proceeding originally, and as stated in Part II hereinafter they did not file a timely application to participate and secure approval of their application by the OHA of DOE.

## II.

*Appellants Request To Participate Was Made So Untimely That OHA Was Not Required To Grant It, And Had Discretion To Deny It*

██ As stated above, the administrative enforcement proceeding against Cities Service (alleging more than $250,000,000 in overcharges) was commenced by DOE before OHA on April 15, 1985. Less than 30 days later on May 10, 1985, PECO and three other parties filed a timely request to participate on the Cities Service enforcement proceeding before OHA. On May 15, 1985, OHA wrote counsel for PECO, ruling that it was appropriate for counsel to represent each of the four parties and participate in the case R. 102.

As stated above, about 17 months later on October 16, 1986, PECO on behalf of itself and three others moved to withdraw its participation on the ground that it was a party to the settlement agreement in *In Re: The Department of Energy Stripper Well Exemption Litigation*, M.D.L. 378 (D.Kan.1986) (later approved by this Court in *United States v. Exxon Corp., supra* (TECA 1985) 773 F.2d 1240, *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986), which required all signing parties to withdraw from all DOE proceedings involving crude oil pricing violations R.104. The petition of PECO, and three others requested that their withdrawal should not prejudice the right of the other members of the classes which they sought to represent, or others particularly, who may have relied on PECO. OHA granted the request of PECO and three other movants, but because no class representation was authorized by the DOE Regulations made no provision for lack of prejudice requested by PECO and three other parties.

*Denial Of Untimely Intervention Of Right Under Rule 24(a), F.R.Civ.P., In Other Cases By TECA*

In a related case this Court has affirmed denial by the United States District Court of Kansas of intervenors in multidistrict litigation M.D.L. 378 in *In Re: Department of Energy Stripper Well Litigation* (TECA 1988), 864 F.2d 796.

In contrast to this case in which appellants sought to participate in administrative proceedings before OHA, the appellants in that case sought to intervene of right in the District Court under Rule 24(a) of the Federal Rules of Civil Procedure. Following the ruling of the Supreme Court of the United States in *NAACP v. New York, supra*, 413 U.S. 345, 93 S.Ct. 2591,

37 L.Ed.2d 648 (1973), this Court held that if the application for intervention is untimely it must be denied. So the rule in administrative proceedings is similar to that under Rule 24(a), F.R.Civ.P.

### Untimely Request By Appellants In This Case

On March 30, 1987, which was more than two years since the commencement of the Cities Service enforcement proceeding, the appellant Con Ed and four other appellant utilities filed with OHA a request for "limited" participation "in the balances" of these proceedings R. 53–56.

On April 9, 1987, OHA denied this request of appellants, ruling as follows:

> More than two years have elapsed since the inception of this case, and good cause has not been shown for your waiting such a considerable period of time prior to attempting to participate in the proceeding. Moreover, the principal argument set forth in the memorandum accompanying your pleadings concerns the legal issue as to whether Cities' transactions were a means to circumvent the Entitlements Program. We have previously held that this issue has not been presented in this proceeding. R. 82.

Appellant Con Ed then filed the complaint in this action in the United States District Court for the District of Columbia against the appellees, the Director and Deputy Director of OHA of the DOE (seeking to compel them to grant appellants the right to participate and intervene before OHA in the Cities Services enforcement proceeding HRO–0285).

After pretrial and hearings on the pending motions, the District Court granted summary judgment to the defendants R. 199, and filed a memorandum of findings of fact and conclusions of law set forth above at R. 189–198, which we fully approve and affirm. The summary judgment of the District Court for appellees was based on the conclusion "that OHA gave a complete explanation for its decision to deny plaintiffs' request for participation." Indeed OHA went beyond that fact that plaintiffs were inexcusably late in filing before OHA

their motion to participate, to demonstrate why plaintiffs' participation would not be timely or appropriate in the final phase of the Cities Service proceeding. R. 198.

In view of the undisputed record of uncontroverted facts the request of appellants to intervene was untimely, and its denial on that ground was within the discretion of the OHA. *In Re: The Department of Energy Stripper Well Exemption Litigation* (TECA 1988) 864 F.2d 796. *Cf. NAACP v. New York*, 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973) on intervention of right. No reasonable explanation appears in the record, briefs or oral argument of appellants' counsel, for the delay of five months, after PECO withdrew, to seek intervention in the Cities Service proceeding before OHA. Therefore appellees were justified in denying the request of appellants to participate in the Cities Service proceeding in their lawful discretion on the ground that the request was untimely.

### III.

*In Light of the Ruling on Untimeliness In Point II Above, It is Unnecessary To Rule On The Contention Of Appellants That OHA Abused Its Discretion By Refusing Intervention of Appellants on the Basis That it Has Already Rejected The Theory Espoused By Appellants*

The third issue and contention, presented by the brief and argument of appellants, is not properly an issue on this appeal by parties appellant who were denied participation and intervention in the basic Cities Service enforcement proceeding before OHA. Without expressing any opinion on the issue, we rule that it is not before the Court in this appeal.

### IV.

### Brief of Proposed Intervenor Cities Service Considered

Cities Service Oil and Gas Corporation (Cities Service) moved to intervene in this appeal. The motion was denied, but Cities

Service was by order of this Court authorized to appear as *Amicus Curiae* and to file a brief. The brief of Cities Service was filed and in substance has been considered as a brief *Amicus Curiae* rather than as a brief of an intervenor.

The brief of Cities Service in this appeal does not disagree with any of the foregoing decisions and disposition of the issues on appeal, but cites authorities and states interesting legal conclusions and principles which will not be considered in issue on this appeal except to the extent they may be necessarily involved in issues I and II above.

## V.

### *Contentions And Authorities Distinguished And Discussed*

In support of its contentions and argument on the first issue in its original brief the appellants rely on the following principal authorities: *Fort Pierce Utilities Authority v. DOE*, 503 F.Supp. 1014 (D.D.C. 1980); *U.S. v. Stringfellow* (C.A.9 1986), 783 F.2d 821, *cert. granted in part*, 476 U.S. 1157, 106 S.Ct. 2273, 90 L.Ed.2d 717 (1986) *cert. dismissed; Stringfellow v. Concerned Neighbors*, 471 U.S. 1095, 105 S.Ct. 2171, 85 L.Ed.2d 527 (1985); *Harris v. Pernsley* (C.A.3 1987), 820 F.2d 592; *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (2nd Cir.1984).

Because we have held that appellants have no right to intervene in the OHA overcharge proceedings under the undisputed fact of untimeliness, we will not discuss or distinguish any of the above cases, except *Fort Pierce Utilities Authority v. DOE, supra* (Fort Pierce). We discuss and distinguish this case because it involves DOE as a defendant, and the right of electric utilities to participate in a DOE overcharge proceeding pending against seven major oil companies. The facts of the *Fort Pierce* case do not support the contentions of appellants in this appeal, because in the *Fort Pierce* case the nine utilities requesting the right to participate in the enforcement proceeding filed an appropriate, timely and proper request in July 1979 after publication by OHA in the Federal Register

on June 13, 1979, of a notice advising persons wishing to participate in the proceedings to file appropriate requests. So because the request to participate was timely and appropriate in the *Fort Pierce* case, the case does not support the contentions and arguments of appellants. So it is unnecessary to comment on the remaining holdings of the *Fort Pierce* case, and other aspects of the administrative discretion of OHA to deny requests to participate or to intervene in overcharge proceedings.

Because of the references to Rule 24 of the Federal Rules of Civil Procedure on Intervention and to Rule 23 of the Federal Rules of Civil Procedure on class actions, we comment that no authority has been cited that convinces us that either of these rules are applicable to administrative proceedings before DOE.

█ There are many cases of this Court and administrative orders of OHA that hold that a timely and appropriate request to participate in an enforcement proceeding should be granted by OHA in the absence of other reasons for denial. And this Court and other Courts have held that the rights of purchasers who were overcharged can be vindicated in a private cause of action under Section 210 of the Economic Stabilization Act. For example, see *Cities Service Oil Co. v. DOE* (TECA 1983), 715 F.2d at 573 1.c. 574. But as held in the *Fort Pierce* case, *supra*, the existence of a private right of action does not preclude the right of intervention in an overcharge proceeding. 503 F.Supp. 1014 1. c. 1024.

For the foregoing reasons, the judgment of the United States District Court for the District of Columbia is affirmed.

All concur. In addition Judge WILLIAM H. BECKER concurs in the specially concurring opinions of Judge THORNBERRY and of Chief Judge GARZA which follow.

THORNBERRY, Judge, specially concurring:

Although I concur in the result reached in the majority opinion, there are several

issues which I believe warrant further discussion.

A brief summary of the facts relevant to this concurrence follows.

In April 1985, the Department of Energy (DOE) (defendants/appellees) initiated an administrative enforcement proceeding against Cities Service Oil and Gas Corporation (Cities Service), alleging that Cities Service violated DOE regulations and overcharged customers $250 million. The Office of Hearings and Appeals (OHA) published a notice of the enforcement action against Cities Service in the *Federal Register*.

Shortly after the notice appeared, the Philadelphia Electric Company (PECO) for itself and three other parties filed a timely request to participate in the enforcement proceeding against Cities Service. PECO's request to participate stated that PECO was "an electric utility acting on behalf of electric utilities burning oil to generate electricity." In another section of the request, PECO sought participation on behalf of "all electric utilities burning oil to generate electricity." The OHA granted PECO's request, allowing PECO "to represent each of the four parties and participate in the ... case."

After the OHA granted PECO the right to participate in the Cities Service proceeding, PECO filed pleadings arguing that the theoretical analysis in the Proposed Remedial Order (PRO) was wrong and that the OHA underestimated Cities Service's violation. The OHA rejected PECO's arguments.

In October 1986, PECO moved to withdraw from participation in the enforcement proceeding against Cities Service because it was a party to a settlement agreement with Cities Service in *In Re the Department of Energy Stripper Well Exemption Litigation*, M.D.L. 378, 653 F.Supp. 108 (D.Kan.1986), *aff'd.* 855 F.2d 865 (TECA 1988). PECO sought permission to withdraw from the Cities Service proceeding

> as [an] individual part[y] and as representative of the utility ... class of end users on whose behalf ... [PECO] sought participation ..., [noting that] ap-

proval of such withdrawal should in no way prejudice the right of the other members of the classes which [PECO] sought to represent, or others; particularly other end users, who may have relied on the participation of PECO.

The OHA dismissed PECO from the proceeding, but did not mention PECO's possible class representation or PECO's request that its withdrawal not prejudice the other utilities.

In March 1987, Plaintiffs/Appellants Consolidated Edison, et al. ("the Utilities") filed a "Request ... for Limited Participation" in the Cities Service enforcement proceeding. None of the Utilities were in the group of four utilities that PECO previously represented. The Utilities wanted to submit a memorandum to the OHA and participate in oral arguments, urging the same theory that PECO originally advanced. The Utilities claimed their theory would support a remedial order and that the OHA's analysis in the PRO might not support such an order. They also asserted that the OHA's proposed order underestimated Cities Service's liability by $50 million.

The OHA rejected the Utilities' request to participate on two grounds: (1) the Utilities failed to seek participation at an earlier date; and (2) the Utilities sought to raise an issue that was precluded by prior interim decisions. The Utilities responded by arguing that (1) their application was timely because they were simply continuing PECO's participation; and (2) the prior OHA decision was in error. After the OHA refused to reconsider the Utilities' request, the Utilities submitted an appeal, seeking an order (1) requiring the OHA to allow the Utilities to participate and (2) enjoining the OHA from making a final decision until the Utilities were allowed to participate.

The district court affirmed the OHA's denial of the Utilities' request for participation, holding that the Utilities had no legal right to rely upon PECO's former representation and that the Utilities failed to comply with the regulations requiring timely requests to participate.

I agree with the majority opinion that the Utilities' request to participate was untimely; however, I do not think the court's inquiry can end with this finding. The Code of Federal Regulations provides that "[a]ny ... person whose interest may be affected by the [enforcement] proceeding may file a request to participate in the proceedings ... within 20 days after publication of the notice." 10 C.F.R. § 205.194(b) (1987). The Utilities filed their request to participate more than a year after the publication of the notice of the enforcement action against Cities Service. The Utilities present several arguments as to why their late filing should not defeat their right to participate in the proceeding.

*Intervention as a matter of right*

The Utilities urge that they have a right to intervene in the enforcement proceedings regardless of the date of their request to participate. A recent opinion of this court squarely addressed this issue in the context of a request to participate under Federal Rule of Civil Procedure 24. In *Getty Oil Co. v. Department of Energy*, 865 F.2d 270 (TECA 1988), several companies sought to intervene in the district court review of a DOE decision ordering Getty to pay restitution for crude oil overcharges. The companies claimed that the amount of restitutionary funds set aside for private claimants was insufficient and that their claims should cover all the overcharges that they sustained. None of the companies seeking intervention had been involved in the earlier administrative proceedings.

In holding that the companies did not have a right to intervene in the district court proceeding, the *Getty Oil* court stated that:

> The proceeding in which applicants have attempted to intervene is the court's review of DOE's restitutionary plan. The statutory basis for the DOE administrative proceeding ... is section 209 of the Economic Stabilization Act ..., which established the government's enforcement authority to vindicate public

interests and authorizes actions to enjoin practices that violate its regulations....

> This court has consistently held that governmental enforcement actions brought under section 209 of the ESA are separate and distinct from the actions of private entities brought pursuant to section 210, and are not to be mingled in one proceeding. [citations omitted]. Since private would-be intervenors are afforded a statutory remedy under section 210 to recover over-charges, they may not intervene in DOE's enforcement proceeding....

> A private party's 'right' to some benefit as a consequence of the overall restitution of petroleum overcharges does not confer a legal right to intervene in a DOE action seeking enforcement of public rights.

*Getty Oil*, 865 F.2d at 275–76. The rationale and holding in Getty Oil apply to the Utilities' claim in the instant case.

*Right to intervene as representative of the class that PECO formerly represented*

The Utilities claim that PECO represented a class of which the Utilities were members and that the Utilities, therefore, had a right to continue to participate even after PECO withdrew from participation. The Utilities were not able to point to any provision in the governing statute which provides for class representation in enforcement proceedings. *See* 10 C.F.R. Part 205, Subpart O. Similarly, the Utilities did not cite a single case where there has been class representation in an enforcement proceeding.

The Utilities rely on PECO's request to participate, which stated that PECO was "an electric utility acting on behalf of electric utilities burning oil to generate electricity." The Utilities also cite to another section of PECO's request, where PECO sought participation on behalf of "all electric utilities burning oil to generate electricity." Although this language may suggest that PECO wanted to represent a class of utility end users, PECO never formally sought class representation.

Even if PECO requested class representation, the OHA never certified a class of which PECO was the representative. The OHA's letter informing PECO of its right to participate stated that it was "appropriate for [PECO] to represent each of the four parties and participate in the ... case." The OHA permitted PECO to represent only four parties, none of which is a party to the instant litigation.

*Good cause exception to late filing.*

There is a good cause exception to the requirement that requests to participate be filed within twenty days of the notice. The Code of Federal Regulation states that "[a] person requesting to participate after the [twenty day] period must show good cause for failure to file a request within the prescribed time period." 10 C.F.R. § 205.194(e) (1987).

The Utilities claim that they fall within the "good cause" exception because PECO was urging the position the Utilities would have taken, and any participation by the Utilities during the period PECO was participating would have been duplicative. The Utilities contend that there was no reason for them to participate until after PECO withdrew. This argument is meritless. In *New York Petroleum Corp. v. Ashland Oil, Co.*, 757 F.2d 288, 292 (TECA 1985), this court held that

[w]hen a party decides to forego taking action in a lawsuit in the expectation that another party will protect its interest, it does so at its peril.... [The party seeking intervention] cannot now escape its consequences, since it is far too late for them to change it without further burdening the other parties and delaying the resolution of what has already been an extremely protracted affair.

*Right to participate by virtue of the settlement agreement in In Re Stripper Well.*

The Utilities urge that they have a right to participate because of the *Stripper Well* Settlement Agreement. The Utilities claim that because they will receive restitutionary payments pursuant to the *Stripper Well* settlement, they have an interest in the proceeding. In particular, they claim they have an interest in the OHA applying the proper analysis and in correctly assessing the amount Cities Service overcharged. The Utilities suggest that until the settlement in *Stripper Well* entitled them to restitutionary payments, they did not have a sufficient interest in the proceeding and were justified in not requesting intervention at an earlier date.

Again, this court's decision in *Getty Oil* takes any steam out of the Utilities' argument. The parties seeking intervention in *Getty Oil* contended that the settlement agreement in *Stripper Well* "created a legal interest sufficient to support intervention." 865 F.2d at 276. The court held that

a private nonparty's interest in some ultimate restitutionary benefit under a remedial plan does not confer a legal right to intervene in the public enforcement action of the Economic Stabilization Act. Nor does a nonparty's right as a potential claimant for restitution under an Agreement created under the ESA rise to the level of a right to intervention.

*Id.* In fact, the *Stripper Well* Agreement specifically states that it "confers no ... enforcement right upon any non-Party." *Id.*

In conclusion, in addition to the majority's holding that the Utilities request to participate was untimely, I would also hold that (1) the Utilities do not have an absolute right to intervene; (2) the Utilities were not members of a class of fuel end users of which PECO was the representative; (3) the Utilities do not fall within the good cause exception for late filing; and (4) any interest the Utilities have in the *Stripper Well* settlement agreement is not sufficient to overcome their untimely request to participate.

GARZA, Chief Judge, specially concurring:

I concur fully in the opinion prepared for this court by Judge Becker.

I write separately because I also concur in the specially concurring opinion of Judge Thornberry that actions of the court below can be upheld not only on the question of untimeliness but for the other reasons expressed in his special concurrence.